**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

*In re:*                                        Case No.: 14-34123-AJC

GUILLERMO BRITO and JUSTINA BRITO,        Chapter 7

_____Debtors._____ /

### CHAPTER 7 TRUSTEE'S (I) OBJECTION TO DEBTORS' CLAIMED EXEMPTIONS AND SCHEDULED VALUATIONS ON PERSONAL PROPERTY AND (II) MOTION FOR TURNOVER OF NON-EXEMPT PERSONAL PROPERTY

Jacqueline Calderin, Chapter 7 Trustee (the "Trustee"), for the bankruptcy estate of Guillermo Brito and Justina Brito (collectively, the "Debtors"), by and through the undersigned counsel, and pursuant to 11 U.S.C. §§ 105, 522, 541, and 542, Rule 4003 of the Federal Rules of Bankruptcy Procedure, (i) objects to the Debtors' claimed exemptions and scheduled valuations of the Debtors' scheduled personal property, and (ii) moves for the entry of an order directing the Debtors to turn over all non-exempt personal property or the value of such property to the Trustee (the "Objection"). In support of the Objection, the Trustee states as follows:

### BACKGROUND

1.      On October 30, 2014 (the "Petition Date"), the Debtors initiated this matter upon the filing of a Voluntary Petition for relief under Chapter 7 of the Bankruptcy Code [ECF #1].

2.      The meeting of creditors under section 341 of the Bankruptcy Code was held and concluded on December 2, 2014 at 4:30 p.m. [ECF# 2] and continued and concluded on December 22, 2014 [ECF# 12 and 16].

3.      On September 30, 2014, the Debtors filed their Schedules of Assets and Liabilities and Statement of Financial Affairs [ECF #1] (the "Schedules"). On Schedule B, the Debtors disclose an interest in certain personal property, including various household goods and

furnishings and apparel in items 4 and 6, respectively, with an aggregate ascribed value of $1,195.00 (the "Personal Property"), which the Debtors have claimed as exempt on Schedule C. The Trustee believes that the value of the Personal Property is significantly higher and may be worth as much as $9,245.00 based on the appraisal obtained by the Trustee attached hereto as **Exhibit "A"** (the "Property Appraisal").

4.       The Debtors also disclose an interest in a 2005 Nissan Altima (the "Vehicle") with an ascribed value of $3,625.00. The Vehicle is owned free and clear of all liens and encumbrances. The Debtors have claimed $2,000.00 of the equity in the Vehicle as exempt. The Trustee disputes the Debtors' valuation of the Vehicle and believes that the value of the Vehicle is as much as $6,000 or more based on the appraisal obtained by the Trustee attached hereto as **Exhibit "B"** (the "Vehicle Appraisal").

5.       In addition to the Personal Property and the Vehicle, the Debtors also have an interest in several bank accounts with Wells Fargo Bank and Space Coast Credit Union (collectively, the "Accounts"). Based on documents provided to the Trustee by the Debtors, the balance of the Accounts as of the Petition Date was $1,831.06.

6.       The Debtors also claim their interest in real property located at 14355 SW 50th Street, Miami, Florida 33175-5019 exempt as their homestead.

7.       On February 22, 2015, the Court entered an order extending the deadline to object to the Debtors' claimed exemptions through and including March 23, 2015 [ECF #39]. This Objection is therefore timely.

**EHRENSTEIN CHARBONNEAU CALDERIN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

## JURISDICTION

8.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

## OBJECTION TO DEBTORS' CLAIMED EXEMPTIONS
## AND SCHEDULED VALUATIONS

9.      Because the Debtors have claimed a homestead exemption, pursuant to Florida Statute § 222.01, 222.02, and Art. X § 4(a)(1) of the Florida Constitution, the Debtors are entitled to exempt property with a value of up to $1,000.00 each (plus $1,000.00 each for a motor vehicle).

10.     Based on the Property Appraisal and the Vehicle Appraisal, however, the Debtors' Personal Property together with the Vehicle and the Accounts as of the Petition Date have an aggregate value of approximately $17,076.06. Accordingly, the Debtors have exceeded the allowed claimed exemption, and the Trustee objects to the Debtors' claimed exemptions and ascribed values for the Personal Property and the Vehicle to the extent the actual Petition Date fair market value of such property when combined with the Debtors' Accounts exceeds the available personal property exemptions permitted under Florida Law.

## MOTION FOR TURNOVER

11.     All non-exempt property is property of the bankruptcy estate pursuant to 11 U.S.C. § 541 and subject to turnover under 11 U.S.C. § 542. To the extent that the Personal Property and Vehicle exceed the maximum allowable exemption, it is subject to immediate turnover. Accordingly, the Trustee seeks immediate turnover of the Personal Property and Vehicle or the value of same, for the benefit of the estate.

3

12.    Notwithstanding Rule 7001 of the Federal Rules of Bankruptcy Procedure, the Trustee should be permitted to seek recovery of the Personal Property by way of this motion. *See e.g., Matter of GP Exp. Airlines, Inc.*, 192 B.R. 954 (Bankr. D. Neb. 1996) (turnover action commenced by motion instead of adversary proceeding is treated as contested matter). In order to contain costs and seek resolution of this matter efficiently and expeditiously, it is appropriate for the Trustee to seek turnover of the Personal Property by way of motion as opposed to filing an adversary complaint.

13.    The Trustee and counsel for the Debtors have engaged in discussions regarding a possible consensual resolution of the issues raised in this Objection but have been unable to reach an agreement prior to filing this Objection. If an agreement is reached, the Parties will upload an agreed order.

**WHEREFORE** the Trustee respectfully requests an Order (i) sustaining the Trustee's Objection, (ii) directing turnover of all Personal Property and Vehicle (or the non-exempt value thereof) to be liquidated by the Trustee subject to the allowed amount of exemptions under Florida law, and (iii) granting such other relief as the Court deems just and proper.

**EHRENSTEIN CHARBONNEAU CALDERIN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case and via U.S. Mail on the parties listed on the below Service list on March 23, 2015.

> ***I HEREBY CERTIFY*** *that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am qualified to practice in this Court as set forth in Local Rule 2090-1(A).*

**EHRENSTEIN CHARBONNEAU CALDERIN**
*Attorneys for the Trustee*
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T. 305.722.2002        F. 305.722.2001
www.ecclegal.com

By: _____
        Matthew A. Petrie, Esq.
        Fla. Bar No. 44770
        map@ecclegal.com

**Service List**
**Guillermo Brito and Justina T Brito**
14355 SW 50th Street
Miami, FL 33175-5019

# Exhibit A



*Virtual*
*Appraisals*
www.virtualappraisals.com



| | |
|---:|:---|
| *Client:* | **Jacqueline Calderin, Trustee** |
| *Debtor:* | **Guillermo Brito & Justina T. Brito** |
| *Case Number:* | **14.34123.BKC.AJC** |
| *Address:* | **14355 S.W. 50 Street** |
| | **Miami, FL 33175** |
| *Date:* | **January 29, 2015** |

*Virtual Appraisals, Inc.*
10211 Pines Blvd.
Unit 188
Pembroke Pines, FL 33026
954-423-1111

| CASE NAME | GUILLERMO BRITO & JUSTINA T. BRITO |
|---|---|
| CASE NUMBER | 14.34123.BKC.AJC |
| TRUSTEE | JACQUELINE CALDERIN |

| LOCATION OF ASSETS | 14355 S.W. 50 STREET<br>MIAMI, FL 33175 |
|---|---|

| DATE OF INSPECTION | 12.15.14 |
|---|---|
| TYPE OF INSPECTION (ON-SITE / VIRTUAL) | VIRTUAL |
| INSPECTION PERFORMED BY | ROBERT ALMODOVAR |

| DATE OF EVALUATION | 12.15.14 |
|---|---|
| EVALUATION PERFORMED BY | HARRY STAMPLER & ROBERT ALMODOVAR |

| DATE OF REVIEW | 01.29.15 |
|---|---|
| REVIEW PERFORMED BY | HARRY STAMPLER |

| DATE OF APPRAISAL REPORT | 01.29.15 |
|---|---|

**APPRAISER INFORMATION**
VIRTUAL APPRAISALS INC
10211 PINES BOULEVARD | UNIT 188 | PEMBROKE PINES FL 33026
954.423.1111 | info@virtualappraisals.com | www.virtualappraisals.com

| DEBTOR'S SCHEDULE B AMOUNT | $1,195.00 |
|---|---|

| APPRAISED VALUE | MARKET VALUE |
|---|---|
| TOTAL PERSONAL PROPERTY | $9,245.00 |



## GUILLERMO BRITO & JUSTINA T. BRITO - CASE No. 14-34123-BKC-AJC

### APPRAISED ON DECEMBER 15, 2014 BY HARRY STAMPLER FROM PHOTOGRAPHS SUPPLIED

| ITEM | QTY | DESCRIPTION | Market Value |
|---|---|---|---|
| | | | |
| **LIVING ROOM** | | | **2,960.00** |
| 1 | 1 | ARTIFICIAL PLANT | 15.00 |
| 2 | 1 | LOT ASSORTED DÉCOR, STATUES, CLOCK, CANDLE HOLDER, ETC. | 125.00 |
| 3 | 1 | FRAMED ARTWORK - APPROXIMATELY 50"x30" | 300.00 |
| 4 | 1 | MARBLE-LIKE FIRE PLACE MANTLE WITH TOOL SET | 500.00 |
| 5 | 1 | BEIGE LEATHER SOFA | 350.00 |
| 6 | 1 | BEIGE LEATHER ARMCHAIR / RECLINER | 200.00 |
| 7 | 1 | MARBLE COLUMN-STYLE BASED COFFEE TABLE WITH GLASS TOP | 150.00 |
| 8 | 12 | ASSORTED DECORATIVE PLATES | 60.00 |
| 9 | 1 | ORNATE BLONDE WOOD WALL UNIT | 500.00 |
| 10 | 1 | FLAT SCREEN TELEVISION - APPROXIMATELY 55" | 300.00 |
| 11 | 1 | TELEVISION STAND | 40.00 |
| 12 | 1 | STEREO SYSTEM WITH SPEAKERS | 150.00 |
| 13 | 1 | LOT ASSORTED FIGURINES, FRAMES, VASES, ETC. (CONTENTS OF WALL UNIT) | 150.00 |
| 14 | 4 | METAL BAR STOOLS WITH BACKS & CREAM CUSHIONS | 120.00 |
| | | | |
| **KITCHEN** | | | **720.00** |
| 15 | 1 | WHITE SIDE-BY-SIDE REFRIGERATOR / FREEZER WITH WATER & ICE DISPENSER | 250.00 |
| 16 | 1 | WHITE SMOOTH TOP ELECTRIC RANGE | 200.00 |
| 17 | 1 | WHITE BUILT-IN MICROWAVE | 100.00 |
| 18 | 1 | WHITE CROCK POT | 10.00 |
| 19 | 1 | FRAMED PRINT | 15.00 |
| 20 | 1 | WHITE DISHWASHER | 100.00 |
| 21 | 1 | LOT ASSORTED GLASSWARE, CUPS, BOWLS, ETC. (VISIBLE IN CABINETS) | 25.00 |
| 22 | 4 | DECORATIVE PLATES | 20.00 |
| | | | |
| **DINING AREA** | | | **1,215.00** |
| 23 | 1 | GRANITE & METAL BASE DINING TABLE WITH GLASS TOP & 4 CHAIRS | 500.00 |
| 24 | 1 | FRAMED ARTWORK - 3 VASES - APPROXIMATELY 48"x40" | 100.00 |
| 25 | 1 | METAL BASE HALL TABLE WITH INLAID GLASS & GRANITE TOP | 150.00 |
| 26 | 1 | ORNATE WOOD FRAMED WALL MIRROR | 100.00 |
| 27 | 1 | DECORATIVE VASE WITH STAND | 75.00 |
| 28 | 1 | ORNATE WOOD COLUMN BASE HALL TABLE WITH GLASS TOP & WINE RACK | 250.00 |
| 29 | 1 | LOT ASSORTED DÉCOR (ON TABLE & WALLS) | 40.00 |
| | | | |
| **BACK YARD** | | | **865.00** |
| 30 | 2 | PROPANE TANKS | 40.00 |
| 31 | 1 | LOT ASSORTED DÉCOR, PLANTS, PLANTERS, ETC. | 100.00 |
| 32 | 1 | CUSTOM WOOD SCREENED GAZEBO / GREEN ROOM | 200.00 |

## GUILLERMO BRITO & JUSTINA T. BRITO - CASE No. 14-34123-BKC-AJC

### APPRAISED ON DECEMBER 15, 2014 BY HARRY STAMPLER FROM PHOTOGRAPHS SUPPLIED

| ITEM | QTY | DESCRIPTION | Market Value |
|---|---|---|---|
| 33 | 1 | PATIO TABLE WITH ROUND GLASS TOP & CHAIRS | 250.00 |
| 34 | 1 | BICYCLE | 50.00 |
| 35 | 1 | RUBBERMAID STORAGE SHED | 125.00 |
| 36 | 1 | LOT ASSORTED POWER TOOLS, HAND TOOLS, SUPPLIES, CARTS, CABLES, ETC. | 100.00 |
| | | | |
| **BEDROOM #1** | | | **1,670.00** |
| 37 | 1 | DARK WOOD DRESSER WITH 3 PIECE MIRROR | 250.00 |
| 38 | 2 | DARK WOOD NIGHT STANDS | 200.00 |
| 39 | 2 | CERAMIC BASE TABLE LAMPS | 100.00 |
| 40 | 1 | WOOD CORNER DESK WITH HUTCH | 75.00 |
| 41 | 1 | DESKTOP COMPUTER SYSTEM WITH FLAT SCREEN  MONITOR, WEBCAM, GAMING CONTROLLER, ETC. | 150.00 |
| 42 | 1 | KING SIZE 4 POSTER BED | 400.00 |
| 43 | 1 | DARK WOOD DRESSER / CHEST | 150.00 |
| 44 | 1 | WOOD ARM CHAIR WITH BEIGE CUSHION SEAT | 35.00 |
| 45 | 1 | DARK WOOD CHEST OF DRAWERS WITH 5 DRAWERS | 150.00 |
| 46 | 1 | LG FLAT SCREEN TELEVISION - APPROXIMATELY 32" | 150.00 |
| 47 | 1 | FAX MACHINE | 10.00 |
| | | | |
| **BEDROOM #2** | | | **785.00** |
| 48 | 1 | FULL SIZE BED (MATTRESS & BOX SPRING) | 100.00 |
| 49 | 1 | ENTERTAINMENT CABINET | 100.00 |
| 50 | 1 | FLAT SCREEN TELEVISION - APPROXIMATELY 42" | 200.00 |
| 51 | 1 | LEATHER ARM CHAIR | 50.00 |
| 52 | 1 | ELECTRONIC KEYBOARD | 100.00 |
| 53 | 1 | FLAT SCREEN MONITOR ON WALL MOUNT - APPROXIMATELY 27" | 60.00 |
| 54 | 1 | DESKTOP COMPUTER SYSTEM | 100.00 |
| 55 | 1 | LOT ASSORTED DÉCOR, ETC. | 25.00 |
| 56 | 1 | LOT ASSORTED STEREO SPEAKERS | 50.00 |
| | | | |
| **BEDROOM #3** | | | **620.00** |
| 57 | 1 | QUEEN SIZE BED WITH HEADBOARD | 300.00 |
| 58 | 1 | TABLE LAMP WITH BEIGE SHADE | 20.00 |
| 59 | 1 | LEATHER SWIVEL OFFICE CHAIR | 35.00 |
| 60 | 1 | WALL MOUNTED FAN | 5.00 |
| 61 | 1 | L-SHAPED DESK | 50.00 |
| 62 | 1 | FLAT SCREEN TELEVISION - APPROXIMATELY 42" | 200.00 |
| 63 | 1 | FRAMED PRINT - MAP | 10.00 |
| | | *APPRAISER'S NOTE:  CONTENTS OF CORNER OF ROOM UNKNOWN - PHOTOGRAPH WAS TOO BLURRY TO IDENTIFY ITEMS.* | |
| | | | |

## GUILLERMO BRITO & JUSTINA T. BRITO - CASE No. 14-34123-BKC-AJC

### APPRAISED ON DECEMBER 15, 2014 BY HARRY STAMPLER FROM PHOTOGRAPHS SUPPLIED

| ITEM | QTY | DESCRIPTION | Market Value |
|------|-----|-------------|--------------|
| **LAUNDRY ROOM** | | | 250.00 |
| 64 | 1 | WASHING MACHINE | 150.00 |
| 65 | 1 | DRYER | 100.00 |
| | | | |
| **JEWELRY** | | | 160.00 |
| 66 | 1 | CASIO G-SHOCK BLACK DIGITAL WATCH | 35.00 |
| 67 | 1 | GENEVA LADIES STAINLESS STEEL WATCH WITH BLUE FACE | 45.00 |
| 68 | 1 | CITIZEN MEN'S ECO-DRIVE GOLD COLOR WATCH WITH SMALL STONES | 80.00 |
| | | | |
| | | **TOTAL MARKET VALUE** | **9,245.00** |

***APPRAISER'S NOTE:*** *CLOTHING & 2 GUNS WERE LISTED ON SCHEDULE B, BUT NOT SHOWN IN PHOTOGRAPHS. NO VALUES WERE GIVEN FOR THESE ITEMS.*

# <u>STANDARD TERMS AND LIMITING CONDITIONS</u>

1.  A personal or virtual inspection of the property being appraised has been made.  The values expressed herein are based on the best judgments of the Appraiser and/or Review Appraiser, if applicable.

2.  Neither Virtual Appraisals, Inc., nor any of its employees has any financial interest in the property being appraised.

3.  The fee and/or compensation for this Appraisal Report are not contingent upon the reported values.

4.  This Appraisal is based only on the readily apparent identity of the assets being appraised, unless otherwise stated herein.  No further opinion, guarantee, authentication, genuineness, attribution or authorship is made or intended.

5.  Unless otherwise stated herein, no consideration has been given to liens, encumbrances or fractional interests, which may be held against certain of or all of the assets being appraised or against the business as a whole.

6.  This is a valid appraisal as of the dates noted.  Said Report is based upon opinions derived from facts and data set forth in the Report and on analysis of the assets being appraised.  Any changes in the nature and condition of the assets subsequent to our inspection could change the results of this Report.  The values contained should not be considered as a guarantee of any sort.

7.  Without previous written consent, no portion of the Appraisal Report may be reproduced, copied or utilized by any party other than the party that the appraisal was prepared for.  Even then, the Report will only be valid if inclusive of all documents, letters, and supporting material originally supplied by the Appraiser.

8.  The Appraiser is not responsible for any unauthorized changes and only said Appraiser or Review Appraiser shall make changes to the Appraisal Report.

9.  This Appraisal Report is prepared for the parties named.  In no way does this indicate or certify title to or ownership of the assets being appraised.

10.  This Appraisal Report is prepared based on the comprehensive standards and requirements of the International Society of Appraisers (ISA) and the Uniform Standards of Professional Appraisal Practice (USPAP).

11.  A Review Appraiser, if applicable, will confirm the adequacy and appropriateness of the report being reviewed.

12.  Ordinary wear and tear common to the assets being appraised is not noted.  Any serious deficiencies and/or repairs obvious to the Appraiser will be included with the report.

13.  No responsibility is assumed for matters of a legal nature.  If additional services are requested of the Appraiser and/or Review Appraiser, in conjunction with this Report, (i.e.: Pretrial Conferences, Depositions, Court Appearances, Additional Research and Documentation, etc.) compensation for same shall be at the customary hourly rate charged by the Appraiser at that time.  A retainer will be required prior to said work and full and final settlement shall be made immediately upon receipt of a statement for such work.

## DEFINITIONS OF VALUE AND MARKETS

**A. VALUE DEFINITIONS**

1. **Replacement Value** is primarily an insurance term meaning the cost to replace an item with another having similar qualities within a reasonable amount of time in the relevant market place.  Takes into consideration costs incurred by engaging an interior designer, shipping, and the costs associated with purchasing from a specific source.

   A. **Replacement cost (new)** is the cost necessary to replace an item of personal property with a NEW item of like kind, quality, and utility.

      1. Considerations of wear and tear, decay or defects within the property itself (functional obsolescence) and changes external to the property such as changes in style (economic obsolescence) are eliminated by this concept.

      2. This definition assumes that an exact substitute can be found for property being appraised or recognizes that the item is being upgraded to a newer model, style, etc.

      3. Replacement cost new is used primarily for items that are still being manufactured and/or are still available on the open market.  Examples include general household contents such as lawn mowers, televisions, and sterling silver flatware in a pattern that is still being manufactured.

   B. **Replacement cost (comparable)** is the cost necessary to replace an item of personal property with a COMPARABLE item of like kind, age, quality, and utility having similar wear and tear, decay or defects, and obsolescence as the items being appraised.

2. **Reproduction cost** is the total current cost of constructing an exact replica, using the same materials and construction techniques as the original by a qualified artist or craftsman.

3. **Actual cash value** is an insurance term defined in most states as replacement cost less depreciation.  Depreciation, in this instance, typically refers to an incremental reduction in value based on age/life formulas commonly in use within the insurance industry.  Actual cash value is usually established by the adjuster based on these depreciation standards and guidelines.

   A. Actual cash value is not applicable to scheduled items such as jewelry, furs, etc.

4. **Liquidation Values (Auction Values)**

   A. **LIQUIDATION VALUE** (Auction Value) is the most probable price for which an item would change hands **if sold immediately** without regard to the most appropriate market.  There is not enough time to find an open market and the property is being sold under compulsion, such as a court-ordered sale within three days.

## DEFINITIONS OF VALUE AND MARKETS (cont.)

    B.  **AUCTION VALUE** is the most probable price for which an item would change hands between knowledgeable buyers and sellers if sold in an orderly manner, properly advertised, **allowing a reasonable amount of time** to complete the transaction in an appropriate marketplace.

5.  **Value in use** is the value of property taking into consideration the extent to which the property contributes to the needs of the owner, or to the success of a business.

6.  **Net Value** represents the anticipated net proceeds that would be yielded from an orderly liquidation of property.  Net proceeds equal the gross proceeds less costs associated with the sale such as auctioneer's commission, hauling, advertising, taxes, etc.

7.  **AUCTION VALUE (FMV)** is a specific hypothetical concept of value defined by a legal or regulatory jurisdiction and varies with individual jurisdictions.  It is important that Appraisers understand the FMV definition, which applies to the function (assigned use) being considered and to the jurisdiction within which the Appraiser is operating.

    A.  FMV, as defined below, is the only value used by the IRS when pertaining to estate tax, gift tax, income tax (including charitable donation deductions), casualty loss, bankruptcy, etc.

    B.  FMV differs from other types of equitable and fair values in that FMV assumes that the enjoyment of **retained benefits** (to sell and enjoy the proceeds, or to keep and enjoy the use) will continue, i.e. the property is taxed on its value **held** or **unsold**.

    C.  The following sections define AUCTION VALUE as used by the Federal government in assessing tax liabilities:

        1.  Internal Revenue Regulation Section 1.170A-1(c)(2) defines **AUCTION VALUE** (FMV) as "The price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts."

          A.  Treasury Regulations define AUCTION VALUE in precisely the same terms (Treasury Regulation Section 20.2031-1(b)), but go on to provide guidance on how the **market** is selected for valuation purposes:

              1.  "AUCTION VALUE is not to be determined by a forced sale..."

              2.  "...Nor is the AUCTION VALUE of an item of property to be determined by the sale price of the item in a *market other than that in which such an item is most commonly sold to the* **public**..."

              3.  "...Taking into consideration the location of the item wherever appropriate."

### DEFINITIONS OF VALUE AND MARKETS (cont.)

       a.  For art and antiques, the improvement in worldwide communications, travel and transportation have caused the market to become largely international and homogenous.  The issue of location is not significant when items can be easily examined and transported anywhere in the world.

B.  Central to this definition is the Appraiser's ability to determine the most appropriate (i.e., active and, therefore, relevant) market.  This is referred to as the most common market.  The most common market may be at auction, at retail, or at wholesale.

C.  The willing buyer (i.e. buyer) is defined as the retail customer who is the ultimate consumer or the most customary consumer and is not limited to individuals.  The public refers only to customary purchasers of an item, not all purchasers.  The ultimate consumer is further defined as one who does not purchase the items for resale, at least in their current form.

    1.  The ultimate consumer, or "public", in the case of a large quantity of low quality unmounted gemstones would be jewelry stores or jewelry manufacturers and not individual consumers.  The ultimate consumer for cattle would be a livestock auction, not supermarket shoppers.

    2.  On the other hand, the AUCTION VALUE for a used automobile is the price for which it could be purchased by a member of the general public, not the price for which it would be purchased by a used car dealer whose intent is resale.

D.  The **relevant market** is that market in which the property most commonly sells to the public.

    1.  Individuals might be able to purchase a contemporary artist's work from a gallery, but if they most commonly purchase directly from the artist himself, then that is the relevant market.

    2.  A large number of outdated medical journals were contributed by a taxpayer who was not a dealer in used books; the taxpayer claimed a deduction based on the retail price of new issues.  However, the only market available (thus a "consumer sale") to the taxpayer was sale to second-hand book dealer. Accordingly, the court held that AUCTION VALUE should be computed on the price a secondhand book dealer would pay.

E.  The ultimate consumer often has the choice of purchasing at more than one price; however, comparable sales to the ultimate consumer must not consider only the highest price that <u>could</u> be paid but rather the price <u>most commonly</u> paid within that market in which sales most commonly occur.

## DEFINITIONS OF VALUE AND MARKETS (cont.)

F.   The government considers a buyer's premium as a component of the purchase price and, as such, a part of FMV.

1.   FMV represents the amount of money that would be <u>obtained</u> rather than <u>retained</u> (i.e., net) from an arm's-length transaction between willing parties.

G.   The concept of AUCTION VALUE assumes that a **reasonable time** is available in which the transaction can occur.  Allowances are made for such necessities as transporting, cleaning, repair, advertising, and conducting of the sale.  Reasonable time is of sufficient duration that the seller is not under compulsion to sell, i.e. the sale is not considered as being under distress.

8.   **Market value** is similar to FMV except that the lack of compulsion to buy or sell is removed (i.e. the sale will be consummated by a particular date) and the assumption of a sale within a specified time frame is added.

Caution:  In some jurisdictions **market value** and **AUCTION VALUE** are used interchangeably.  The *Uniform Standards of Professional Appraisal Practice (USPAP)* defines market value as:

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus.  Implicit in this definition is the consummation of a sale as a specified date and the passing of title from seller to buyer under conditions whereby:

1.   Buyer and seller are typically motivated,

2.   Both parties are well informed or well advised, and acting in what they consider their best interests,

3.   A reasonable time is allowed for exposure in the open market,

4.   Payment is made in terms of cash in United States dollars or in terms of financial arrangements comparable thereto, [In foreign jurisdictions, the use of the local currency should be noted along with appropriate exchange rates used. -Ed.],

5.   The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

## DEFINITIONS OF VALUE AND MARKETS (cont.)

**B.  MARKET DEFINITIONS**

1.  The purpose and function (assigned use) of an appraisal determines the most appropriate market to which the Appraiser must go to find comparable sales.  The most appropriate market will depend on what is being sold, the quantity being sold, the quality of the property being sold, and the urgency with which the property must be sold.

    A.  The **retail market** is the most common market in which items are sold at retail.  Examples are antique shops, art galleries, department stores, discount stores, flea markets, estate tag sales, etc.

    B.  The **distress market** is the market in which property is sold within a limited time frame.

    C.  The **orderly liquidation market** is the market in which property is regularly sold in an orderly and advertised fashion but for which time constraints apply.  Examples are auction galleries, on-site auctions, and estate tag sales.

    D.  The **wholesale market** is the market in which wholesalers can sell to the trade and dealers can buy for resale to the public.

2.  Markets may vary depending on:

    A.  Property condition

    B.  Property quantity

    C.  Property quality

    D.  Urgency to sell

    E.  Availability of financing

## <u>CERTIFICATE OF APPRAISER</u>

1. Harry Stampler, personally evaluated the property appraised from the photograph(s), list(s), and/or notes provided;

2. If photograph(s) to conduct this appraisal were supplied by a third party (i.e. debtor), then the Affidavit signed by the third party / debtor, states that the photographs provided represent "…all personal property owned…";

3. The statements contained in this appraisal and upon which the opinions expressed herein are based, are true and correct to the best of my knowledge and belief, subject to the limiting conditions set forth;

4. To the best of our knowledge and belief, no pertinent information has been overlooked or withheld;

5. Stampler has no interest either present or contemplated in the property appraised or in any proceeds to be derived there from.

6. Compensation is not contingent upon any action or event resulting from the analyses, opinions or conclusions in, or the use of, this report;

7. All analyses, opinions and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practices



**VIRTUAL APPRAISALS, INC.**
**10211 PINES BOULEVARD #188**
**PEMBROKE PINES FL 33026**
**954.423.1111**
**info@virtualappraisals.com**
**www.virtualappraisals.com**



**14355 SW 50 St, Miami, FL 33175**



**LIVING ROOM**



**LIVING ROOM**



**LIVING ROOM**



**LIVING ROOM**



**KITCHEN**



**KITCHEN**



**KITCHEN**



**KITCHEN**



**DINING AREA**



**DINING AREA**



**DINING AREA**



**DINING AREA**



**BACK YARD / POOL AREA**



**BACK YARD / POOL AREA**



**BACK YARD / POOL AREA**



**BACK YARD / POOL AREA**



**BACK YARD / POOL AREA**



**BACK YARD / POOL AREA**



**BACK YARD / POOL AREA**



**BEDROOM #1**



**BEDROOM #1**



**BEDROOM #1**



**BEDROOM #1**



**BEDROOM #2**



**BEDROOM #2**



**BEDROOM #2**



**BEDROOM #2**



**BEDROOM #2**



**BEDROOM #2**



**BEDROOM #2**



**BEDROOM #3**



**LAUNDRY ROOM**



**LAUNDRY ROOM**



**JEWELRY**

"

"

**Gzj kdkv'D**



## VEHICLE EVALUATION

**Trustee:**          JACQUELINE CALDERIN, TRUSTEE
**Case Name / No.:**   GUILLERMO BRITO & JUSTINA T. BRITO – 14-34123-BKC-AJC

**Year:** 2005   **Make:** NISSAN        **Model:** ALTIMA 2.5 SL
**VIN#:** 1N4AL11D15N416643        **Color:** GREEN        **Miles:** 77,946

|  | GOOD | AVERAGE | ROUGH |
|---|---|---|---|
| TIRES |  | x |  |
| PAINT |  | x |  |
| EXTERIOR BODY |  | x |  |
| INTERIOR |  | x |  |
| ENGINE / TRANSMISSION |  | x |  |
| OVERALL CONDITION |  | x |  |

☒ AUTOMATIC          ☒ AIR CONDITIONING      ☐ 4 WHEEL DRIVE
☐ MANUAL             ☐ REAR A/C              ☒ KEYLESS ENTRY
☒ POWER BRAKES       ☒ AM / FM RADIO         ☐ TOW PACKAGE
☒ POWER STEERING     ☒ CD PLAYER             ☐ 3RD ROW SEATING
☒ POWER LOCKS        ☐ TV                    ☐ HEATED SEATS
☒ POWER WINDOWS      ☐ DVD PLAYER            ☐ 2 DOOR
☐ POWER SEATS        ☐ NAVIGATION SYSTEM     ☒ 4 DOOR
☐ LEATHER SEATS      ☐ SUN ROOF              ☐ HATCHBACK
☒ CLOTH SEATS        ☐ CONVERTIBLE           ☐ V-8 ENGINE

**COLLISION DAMAGE**  ☐ YES  ☒ NO      **CORROSION DAMAGE**  ☐ YES  ☒ NO

**ADDITIONAL NOTES:**  Normal scratches & dents to exterior.

## CURRENT "AS-IS" VALUE

**MARKET VALUE**              $   6,000.00

EVALUATED BY HARRY STAMPLER ON DECEMBER 6, 2014
FROM PHOTOGRAPHS & INFORMATION PROVIDED.

**SCHEDULE B CLAIMED VALUE**    $   3,625.00



**2005 NISSAN ALTIMA SL 2.5**



**DRIVER SIDE VIEW**



**REAR VIEW**



**PASSENGER SIDE VIEW**



**FRONT INTERIOR**



**REAR INTERIOR**



**MILEAGE: 77,946**



**VIN # 1N4AL11D15N416643**